UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE E. HOFNER,

      Plaintiff,

                                    CASE NO. 04-CV-73176-DT

v.                                 JUDGE DENISE PAGE HOOD

                                    MAGISTRATE JUDGE PAUL J. KOMIVES

NORTHWEST AIRLINES, INC.,

      Defendant.

_____/

**REPORT AND RECOMMENDATION REGARDING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 7)**

Table of Contents

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
          1.   *Procedural background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
          2.   *Factual background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    B.    *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
          1.   *Employee Retirement Income Security Act of 1974 (ERISA)* . . . . . . . . . . . . . . . . . . . . . 5
          2.   *Complete pre-emption of state law claims under ERISA* . . . . . . . . . . . . . . . . . . . . . . . 6
          3.   *Pre-emption of state law claims under ERISA 29 U.S.C. § 1144* . . . . . . . . . . . . . . . 7
    C.    *ERISA's Application to the Present Case* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          1.   *Plaintiff's state law claims are pre-empted by ERISA 29 § 1144(a); therefore, the Court
              should deny her motion for summary judgment.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          2.   *However, the Court should order the parties to brief the issue of whether plaintiff's state
              law claims are completely pre-empted by 29 U.S.C. § 1132(a)(1)(B).* . . . . . . . . . . . . 17
          3.   *If the Court ultimately concludes that plaintiff's claims are completely preempted by 29
              U.S.C. § 1132(a)(1)(B), then it should dismiss plaintiff's state law claims and provide
              plaintiff an opportunity to amend her complaint to set forth ERISA claims.* . . . . . . . . 20

III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

I.    **RECOMMENDATION:**  The Court should find that plaintiff's claims are preempted by 29 U.S.C. § 1144(a) and should deny plaintiff's motion for summary judgment.  If the Court agrees with this recommendation, it should enter an order requiring the parties to brief the issue of whether plaintiff's state law claims are completely pre-empted by 29 U.S.C. § 1132(a)(1)(B).  If the Court ultimately concludes that plaintiff's state law claims are completely pre-empted by Section 1132(a)(1)(B), it should then dismiss plaintiff's state law claims but provide plaintiff an opportunity to amend the complaint to state ERISA claims.

II.    **REPORT:**

A.    *Background*

1.    *Procedural background*

Plaintiff Jane E. Hofner ("Hofner" or "plaintiff") filed the instant complaint in Wayne County Circuit Court on July 16, 2004.  She brings this action against defendant Northwest Airlines, Inc. ("Northwest"), asserting the following state law claims:  (I) breach of contract, (II) promissory estoppel, (III) breach of implied contract, (IV) unfair trade practice, (V) misrepresentation, and (VI) silent fraud.  (Doc. Ent. 1 [Compl.] at 2-7 ¶¶ 4-41).

On August 18, 2004, Northwest removed the case to this Court.  Northwest then filed an answer on September 10, 2004, which argued, among several affirmative defenses, that all of Mrs. Hofner's state law claims were preempted by ERISA.  (Doc. Ent. 2 [Ans.] at 6 ¶ 2).  In an October 25, 2004 response to Northwest's affirmative defenses, Hofner denied ERISA's pre-emption of her state law claims.  (Doc. Ent. 5).

On January 31, 2005, Hofner filed a motion for summary judgment in which she made the following arguments:

     I.      [DEFENDANT] IS LEGALLY RESPONSIBLE FOR [HER] BENEFITS ENROLLMENT NOT BEING PROPERLY RECEIVED AND RECORDED WITHIN [ITS] OWN WEB SITE AND COMPUTER SYSTEM.

     II.     [HER] CLAIMS ARE NOT PREEMPTED BY ERISA.

     III.    EVEN IF, ARGUENDO, [HER] CLAIMS WERE VIEWED AS SUBJECT TO ERISA, [DEFENDANT] WOULD STILL BE RESPONSIBLE TO [HER] BASED UPON BREACH OF ITS FIDUCIARY DUTY.

(Doc. Ent. 7 [Mt.] at 4). Plaintiff claims this case "presents the question of whether [she] is entitled to the value of the benefits she signed up for but which the computer and website provided by Northwest failed to transmit or record." Mtn. at 3 ¶ 11. In her opinion, she should receive the value of the benefits for which she enrolled on defendant's computer; defendant's decision denying benefits should be overturned; and the Court should grant summary judgment in her favor. Mtn. at 4 ¶ 12. Plaintiff also seeks interest, attorney fees and costs. Mtn. at 10.

On February 17, 2005, Judge Hood referred plaintiff's motion to me for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B). Defendant then responded to plaintiff's motion for summary judgment on February 24, 2005 and requested that its administrative decision denying plaintiff's claim be affirmed. (Doc. Ent. 9 [Rsp.] at 2). Plaintiff replied to defendant's response on March 10, 2005. (Doc. Ent. 10 [Rpl.]).

**2.** *Factual background*

Plaintiff is an employee of Northwest. Mtn. at 2 ¶ 1. 2003 Open Enrollment for Northwest employees took place from October 28, 2002 to November 22, 2002. Pl.'s Ex. 4,

Def.'s Ex. 4.[1]  Northwest's policy was that an employee must sign up for their benefits package and then wait until they receive a coverage statement.  According to Northwest, employees were encouraged to review the confirmation statement carefully.  Rsp. at 2-4.

Mrs. Hofner claims that she did in fact sign up for Spouse Life Insurance and Accidental Death and Dismemberment (AD&D) Insurance through the Northwest Airlines Benefit Program (NWABP) and did so on a Northwest issued computer terminal in late October or early November 2002.  Mtn. at 2 ¶¶ 2, 4.  Mrs. Hofner states there were people who witnessed her sign up for the Spouse Life Insurance and AD&D programs.  Mtn. at 2 ¶¶ 2-3.[2]  Mrs. Hofner contends that she signed up for $300,000 in Spouse Life Insurance coverage and $90,000 in AD&D coverage.  *Id.* at 2 ¶ 4; *see also* Pl.'s Ex. 4.  According to plaintiff, she had a conversation with co-workers at the time of enrollment about why she was signing up for the full amount of Spouse Life Insurance and AD&D insurance.  *Id.* at 2 ¶ 5; Pl.'s Ex. 1 [Hofner Aff.] ¶ 5.[3]

_____

[1]Portions of Northwest Open Enrollment 2003 materials are attached to defendant's response.  Def.'s Exhibits 1-3.  Furthermore, a 2003 Open Enrollment worksheet was sent to plaintiff's home.  Mtn. at 4, Def.'s Ex. 4.

[2]Attached to plaintiff's motion is the unsigned, two-page affidavit of Jean Guerin which states, in part:  "I watched her complete and submit her enrollment via the computer provided by Northwest Airlines, Inc., and saw the printout of her enrollment."  Guerin Aff. ¶ 5.
The January 27, 2005 affidavit of Kathleen Ann Forystek (another Northwest employee) states, in part:  "I was there when Jane Hofner enrolled, and I watched her use the computer to enroll for her benefits, including spousal life and accident death and dismemberment."  Pl.'s Ex. 3 [Forystek Aff. ¶ 5].

[3]The two-page Hofner affidavit attached to plaintiff's motion is unsigned.  Pl.'s Ex. 1.  The unsigned Guerin affidavit provides:  "I know that Jane Hofner selected the maximum spousal life insurance, accidental death and dismemberment benefits because we discussed it as she selected them, and I watched her select them."  Pl.'s Ex. 2 [Guerin Aff. ¶ 4].  The Forystek affidavit provides: "While there, I had a conversation with Jane Hofner, Jean Guerin, and others regarding what amounts of spousal life insurance and accident death and dismemberment we were each enrolling for . . . Jane Hofner told me that she was enrolling for the maximum amounts, and advised that we all should consider doing it considering how little it cost per

4

On July 18, 2003, plaintiff's husband, Eric M. Hofner, died in an automobile accident. *Id.* at ¶ 6; Def.'s Ex. 6. After the death of her husband, Mrs. Hofner inquired of Northwest as to how she should go about filing a claim for recovery of benefits from the Spouse Life Insurance and AD&D insurance, which is part of the NWABP. Mtn. at 3 ¶ 7. Mrs. Hofner was told that Northwest did not have a record of her enrollment. Mtn. at 3 ¶ 7-8.

Mrs. Hofner sent a letter dated October 1, 2003 to Northwest, through her attorneys, stating that she believed that she was enrolled in the spouse life and AD&D programs and was due a total of $390,000 in benefits from the death of her husband. Pl.'s Ex. 5, Def. Ex. 6. Plaintiff's counsel sent a second letter dated December 11, 2003. Def.'s Ex. 6. Northwest wrote back to plaintiff's counsel in a letter dated December 16, 2003 and stated that Mrs. Hofner was not signed up for Spouse Life or AD&D and had not paid for these benefits. Pl.'s Ex. 6, Def.'s Ex. 7. Northwest claims that Mrs. Hofner did not sign up for spouse life or AD&D insurance. Ans. ¶ 5.

**B.    *Applicable Law***

**1.    *Employee Retirement Income Security Act of 1974 (ERISA)***

Title 29 of the United States Code governs labor. Chapter 18, which covers the employee retirement income security program, comprises the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. It is the policy of ERISA

> to protect interstate commerce and the interests of participants in employee
> benefit plans and their beneficiaries, by requiring the disclosure and reporting to
> participants and beneficiaries of financial and other information with respect
> thereto, by establishing standards of conduct, responsibility, and obligation for
> fiduciaries of employee benefit plans, and by providing for appropriate remedies,

---

month." Forystek Aff. ¶¶ 3-4.

5

sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b).  Under 29 U.S.C. § 1132 ("Civil enforcement"), "[a] civil action may be

brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of

his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits

under the terms of the plan[.]"  29 U.S.C. § 1132(a)(1)(B).

**2.**     *Complete pre-emption of state law claims under ERISA*

"Federal pre-emption is ordinarily a federal defense to the plaintiff's suit."  *Metropolitan*

*Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).  "As a defense, it does not appear on the face of a

well-pleaded complaint, and, therefore, does not authorize removal to federal court."

*Metropolitan Life Ins. Co.*, 481 U.S. at 63 (citing *Gully v. First National Bank*, 299 U.S. 109

(1936)).

"One corollary of the well-pleaded complaint rule developed in the case law, however, is

that Congress may so completely pre-empt a particular area that any civil complaint raising this

select group of claims is necessarily federal in character."  *Id*. at 63-64.  "Congress has clearly

manifested an intent to make causes of action within the scope of the civil enforcement

provisions of § 502(a) [29 U.S.C. § 1132(a)] removable to federal court."  *Id*. at 66.

"[I]n order to come within the [complete pre-emption] exception a court must conclude

that the common law or statutory claim under state law should be characterized as a superseding

ERISA action 'to recover benefits due to him under the terms of his plan, to enforce his rights

under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan,'

as provided in § 1132(a)(1)(B)."  *Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir. 1995).

*See also Wright v. General Motors Corp.*, 262 F.3d 610, 614 (6th Cir. 2001); *Peters v. Lincoln*

6

*Electric Company*, 285 F.3d 456, 468 n.11 (6th Cir. 2002).

"Removal is allowed in § 1132(a)(1)(B) type cases under *Metropolitan Life* because of the Court's conclusion that Congress intended federal law to occupy the regulated field of pension contract enforcement." *Warner*, 46 F.3d at 535. "Removal jurisdiction based on original federal jurisdiction under § 1441[⁴] is . . . not as broad as federal appellate jurisdiction which extends to federal defenses." *Id.*

**3.    *Pre-emption of state law claims under ERISA 29 U.S.C. § 1144***

In order to allow the access to federal courts that § 1001(b) envisions, ERISA was created with a pre-emption clause that results in preemption of state law claims in favor of federal law. The pre-emption clause (29 U.S.C. § 1144 ("Other laws")) states: "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter . . . shall supercede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan[.]" 29 U.S.C. § 1144(a) (emphasis added). "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

In order to determine if a state law claim is pre-empted by 29 U.S.C. § 1144, two determinations must be made: "(1) whether the plan at issue is an 'employee benefit plan' and (2) whether the cause of action 'relates to' this employee benefit plan." *McMahon v. Digital Equip. Corp.*, 162 F.3d 28, 36 (1st Cir. 1998). According to the United States Supreme Court, "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98

---

⁴28 U.S.C. § 1441 ("Actions removable generally").

(1983).

"[A] state law may "relate to" a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987)).[5]  *See also Tinsley v. General Motors Corporation*, 227 F.3d 700, 703 (6th Cir. 2000); *Zuniga v. Blue Cross and Blue Shield of Michigan*, 52 F.3d 1395, 1401 (6th Cir. 1995); *Moore v. Philip Morris Companies, Inc.*, 8 F.3d 335, 341 (6th Cir. 6th Cir. 1993).  "Pre-emption is also not precluded simply because a state law is consistent with ERISA's substantive requirements." *Id*. (citing *Metropolitan Life, Inc. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985)).

On the other hand, the Supreme Court has acknowledged that not all state actions are preempted.  "[S]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21.  *See also Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) ("[O]nly those state laws and state law claims whose effect on employee benefit plans is

―――――――――――――

[5]In *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990), the Court considered "whether [ERISA] pre-empts a state common law claim that an employee was unlawfully discharged to prevent his attainment of benefits under a plan covered by ERISA." *Ingersoll-Rand Co.*, 498 U.S. at 135.  The Court stated:  "[h]ere, the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law.  As a result, this cause of action relates not merely to pension benefits, but to the essence of the pension *plan* itself." *Id*. at 139-140 (emphasis in original).  The Court concluded that "the employee's pension fund-'relate[s] to' an ERISA-covered plan within the meaning of § 514(a) [29 U.S.C. § 1144(a)], and is therefore pre-empted." *Id*. at 140.  The Court explained that the state-law cause of action "makes specific reference to, and indeed is premised on, the existence of a pension plan." *Ingersoll-Rand*, 481 U.S. at 140.  As the Court noted, "[b]ecause the court's inquiry must be directed to the plan, this judicially created cause of action 'relate[s] to' an ERISA plan." *Id*. Also, the Court explained, there was no cause of action if there was no plan. *Id*.

merely tenuous, remote or peripheral are not preempted.");[6] *Moore*, 8 F.3d at 341.

"ERISA's pre-emption provision was prompted by recognition that employers establishing and maintaining employee benefit plans are faced with the task of coordinating complex administrative activities." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 11 (1987). *See also Moore*, 8 F.3d at 341. State laws are not preempted when they do not establish or require an employer to maintain an employee benefit plan. *Fort Halifax Packing Co.*, 482 U.S. at 6.

**C.    *ERISA's Application to the Present Case***

**1.    *Plaintiff's state law claims are pre-empted by ERISA 29 § 1144(a); therefore, the Court should deny her motion for summary judgment.***

**a.    *Parties' arguments***

Here, there is no argument by either party that the NWABP is not an "employee benefit plan" under ERISA. Therefore the dispute lies in whether the plaintiff's complaints "relate to" the NWABP.

As previously mentioned, plaintiff's complaint sets forth the following state law claims:

_____

[6]The Sixth Circuit "has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) (citing cases). "It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Cromwell*, 944 F.2d at 1276. *See also Zuniga v. Blue Cross and Blue Shield of Michigan*, 52 F.3d 1395, 1401 (6th Cir. 1995).

In *Cromwell*, the Sixth Circuit affirmed the district court's "holding that appellants' state law claims 'relate to an employee benefit plan' and therefore are preempted, that appellants' breach of contract claim set forth an ERISA claim, and that appellants' lack of standing did not retroactively defeat removal jurisdiction and require a remand of the entire action, including the preempted state claims, to state court." *Id*. at 1278-1279.

(I) breach of contract,[7] (II) promissory estoppel,[8] (III) breach of implied contract, (IV) unfair

trade practice in violation of Section 500.2006 ("Timely payment of claims or interest; proof of

loss; calculation of interest; exemptions") of the Uniform Trade Practices Act, Mich. Comp.

Laws §§ 500.2001-2050, (V) misrepresentation,[9] and (VI) silent fraud.  (Doc. Ent. 1 [Compl.] at

2-7 ¶¶ 4-41).

Plaintiff states: "While the insurance carrier [with which Northwest Airlines contracted]

_____

[7]Plaintiff contends that "Northwest breached its duty to allow [her] to participate in the insurance plans by failing to provide a method for signing up for the plan that properly recorded her enrollment."  Mtn. at 4.  According to plaintiff, Northwest's administrative record proves that defendant required employees to use Northwest's website to enroll for their 2003 benefits. Mtn. at 4-5, citing Def.'s Administrative R. at 69.  Plaintiff claims she followed Northwest's enrollment instructions.  Mtn. at 5.  If defendant does not have record of plaintiff's enrollment within its system, plaintiff argues, "then the lack of such records is clearly due to a malfunction of either Northwest's website or its computer system."  Mtn. at 5.

[8]Plaintiff claims that, having required employees to enroll on-line, "Northwest assumed the obligation of ensuring that those employees who followed their instructions were actually provided with the benefits selected. [Plaintiff] did exactly as she was instructed by Northwest to do, and Northwest, having promised to provide insurance coverage to [her] if she used their system to enroll for her employee benefits, is estopped from hiding behind a malfunction in its own computer/website systems to deny [her] the value of the insurance proceeds that she would have been entitled to, as part of her contract of employment, if Northwest's computer and website had correctly processed her enrollment."  Mtn. at 6.
Also, plaintiff states: "Having promised [plaintiff] spousal life insurance and accidental death and dismemberment benefits if she enrolled for such coverage via Northwest's website, and [plaintiff] having acted upon such promise by going to a Northwest computer, accessing Northwest website and taking the steps necessary to enroll for such insurance, Northwest is estopped from failing to provide [her] with the value of the promised benefits."  Mtn. at 7.

[9]Plaintiff argues that "[s]ince [she] followed the instructions given to her by Northwest for enrolling in the spousal life and accidental death and dismemberment plans offered to Northwest employees, and relied upon Northwest's representations that doing so would entitle her to the benefits she selected, Northwest is legally responsible to [her], for both fraudulent and innocent misrepresentation[.] []Northwest affirmatively misrepresented that the computer and website provided by Northwest would properly process her enrollment, and Mrs. Hofner lost $390,000.00 in benefits as a direct result of having relied upon such misrepresentation[;] [therefore] Northwest is liable to [her] for the value of the benefits of such plans."  Mtn. at 5-6.

to provide such coverage for its employees might not be obligated to pay such benefits [since it was Northwest's system that failed], Northwest still is obligated to make good on its promise to process [plaintiff's] enrollment, and to compensate [plaintiff] for the damages ($390,000.00 in lost insurance benefits) that she sustained as a result of Northwest Airlines' failure to honor such promise."  Mtn. at 7.

Relatedly, plaintiff argues that her claims "are not preempted by ERISA."  Mtn. at 7-9. In support of her argument, plaintiff relies upon *Hill v. Ford Motor Company*, 183 Mich. App. 208, 213-214, 454 N.W.2d 125, 127-128 (1989) (misrepresentation claim did not "relate to" plan, but breach of contract claim did).  She contends that "[w]here, as here, [she] is not claiming against the plan itself, but against Northwest for denying her the promised right to participate in the plans she signed up for via nwapeople.nwa.com, and to receive plan benefits in the event of the death of her husband, ERISA is inapplicable."  Mtn. at 8-9 (internal footnote omitted).

As an introductory matter, defendant characterizes plaintiff's complaint as follows: "[t]here is no question that the insurance benefits at issue involved an ERISA-governed employee welfare benefit plan.  Plaintiff's state law claims are that Northwest is liable to her for the amount of life insurance benefits because her application for enrollment in those benefits was not properly processed through Northwest's computer-based enrollment system."  Rsp. at 2.

Specifically, defendant argues that "[p]laintiff's state law claims are pre-empted by ERISA."  Rsp. at 6-11.  In support of this argument, defendant contends that "whether [p]laintiff would be entitled to benefits had she been enrolled in the insurance for which she seeks benefits requires examining the plan[,]" and "determining the amount of damages (i.e., the amount of benefits under the [NWAPB]) requires examining the plan."  Rsp. at 7.  Defendant argues that

11

"[p]laintiff's state claims necessarily entail reference to the ERISA welfare benefit plan in establishing her alleged damages, which is the amount that would have been paid under the plan." Rsp. at 9. Defendant contends, "[t]hat [p]laintiff's state law claims are inextricably intertwined with an ERISA plan (and therefore 'relate to' such a plan and are pre-empted) is clear from the allegations of [p]laintiff's own [c]omplaint." Rsp. at 9.[10] Finally, defendant states that "[a]ll of [p]laintiff's claims directly relate to the [NWABP] Plan because they all rely upon it for the measure of damages. Moreover, every claim specifically relies upon the existence of the plan and its contents, and thus directly relates to the plan." Rsp. at 11.

In her reply, plaintiff argues that "summary judgment and the submittal of affidavits was, and is, appropriate[,]" "[b]ecause []ERISA does not govern this case[.]" Rpl. at 3-4. Plaintiff characterizes her lawsuit as a "denial of enrollment" rather than "denial of benefits" action. Rpl. at 3. She claims that "this case revolves around whether or not [defendant] is legally responsible to [her] for having deprived her of her right to be a participant in the life insurance and AD&D plans, when [defendant] failed, despite representations to the contrary, to provide an enrollment system that would properly record her enrollment." Rpl. at 3-4.

**b.     Analysis**

I am persuaded by the cases defendant cites on pages six (6) through nine (9) of its response brief. In *Hampers v. W.R. Grace & Co., Inc.*, 202 F.3d 44 (1st Cir. 2000), the First Circuit considered whether ERISA "preempts a common law cause of action for lump sum

---

[10]Specifically, defendant points to ¶¶ 8, 10-12 of the breach of contract claim; ¶¶ 15, 19, 21 of the promissory estoppel claim; ¶¶ 23, 27 of the breach of implied contract claim; ¶ 29 of the unfair trade practices claim; and ¶¶ 33, 35, 39, 41 of the misrepresentation and silent fraud claims. Rsp. at 9-10.

contract damages where the alleged breach involves the failure of a former employer to enroll the plaintiff in an ERISA-regulated employee pension benefit plan." *Hampers*, 202 F.3d at 45. The Court concluded that "[plaintiff's] state law contract claim against Grace [employer] 'relates to' the NMC SERP within the meaning of ERISA's preemption clause because [plaintiff's] state law claim is an alternative to his claims for NMC SERP benefits against Grace, NMC, and Fresenius brought under ERISA." *Id.* at 53-54.[11]

Furthermore, I am persuaded by the two federal district court cases cited in defendant's response. *Robinson v. Fikes of Alabama, Inc.*, 804 F. Supp. 277, 283 (M. D. Ala. 1992)

---

[11]The First Circuit based its conclusion on several factors: "(1) Hampers's state law claim against Grace alleges precisely the same conduct that underlies his claims for SERP benefits under ERISA; (2) the relief requested by Hampers focuses primarily on NMC SERP benefits; (3) finding Grace liable for breach of contract might require the court to order the NMC SERP to pay plan benefits; (4) the only claim for damages in the complaint is linked to a request for attorneys' fees under ERISA [but not authorized by state law]; (5) *Hampers calculates the amount of his alleged damages by reference to the NMC SERP*; (6) the central liability question at issue in his state law claim against Grace--whether the 1991 Agreement promised him inclusion in the NMC SERP-must be viewed in light of the terms of the NMC SERP and the NMC qualified plan; and (7) Grace's decision to deny Hampers participation rights in the ERISA-regulated plan--the conduct at issue in the state law claim--resulted from a decision made by Grace in its capacity as an ERISA employer with responsibility and authority over the ERISA-regulated plan. Accordingly, the district court did not err in finding Hampers's state law claim against Grace preempted and denying his demand for a jury trial." *Hampers*, 202 F.3d at 54, 52 (emphasis added).

Hampers specifically stated: "ERISA preempts state law causes of action for damages where the damages must be calculated using the terms of an ERISA plan." *Hampers v. W.R. Grace & Co., Inc.*, 202 F.3d 44, 52-53 (1st Cir. 2000) ("the wrongful conduct alleged by Hampers involves a determination of whether benefits will be paid under an ERISA-governed plan."). To be sure, the Sixth Circuit has stated that where "all that is needed is a simple mathematical calculation of benefits[,] the claimed damages . . . relate only peripherally to the ERISA plan." *Peters v. Lincoln Electric Co.*, 285 F.3d 456, 469 (6th Cir. 2002) (describing a "wrongful discharge claim where plaintiff's incidental damages award merely includes a loss of benefits under an ERISA-based plan, the state claim is not preempted."). However, *Peters* is distinguishable from the case at bar, because here plaintiff's claimed damages are not "peripheral" or "incidental".

("Robinson's state-law claims must also be preempted because in order to calculate what, if any, damages Robinson incurred as a result of Fikes's alleged failure to ensure his enrollment in the plan, the court would first be required to determine whether Robinson's injury would have been covered under the terms of the CRL plan.  If this accident did not fall within the scope of the policy coverage, Robinson suffered no loss by virtue of his untimely enrollment.  Thus, the damages sought for the breach of contract, negligent failure to provide insurance, and fraud, misrepresentation and deceit claims require a construction of the terms of the plan."); *Goodman v. S & A Restaurant Corporation*, 756 F. Supp. 966, 968 (S. D. Miss. 1990) ("Goodman's state law claims are preempted by ERISA. Her state law claims, whether couched in terms of tort or contract, are essentially that but for the defendant's negligent handling of her enrollment application, she would have become an S & A benefit plan participant, and because of her reliance upon defendant's assurances and representations, she is entitled to recover damages equivalent to the benefits that would have been provided had she become a plan participant. In other words, she claims that since she was precluded from becoming a plan participant by virtue of the defendant's conduct, she should be treated for all practical purposes as though she did in fact become a plan participant.").[12]

In the case at hand, plaintiff clearly relies on the existence of an ERISA plan.  The damages sought in all of the state claims are $390,000.  This is the amount of benefits that plaintiff would allegedly be due if she were enrolled in the spouse life and AD&D programs as she claims.  This seems to be precisely the scheme envisioned by *Ingersoll-Rand* in calling for

---

[12]In her reply, plaintiff claims that the reasoning of these cases was criticized in *Rozzell v. Security Services, Inc.*, 38 F.3d 819 (5th Cir. 1994).  Rpl. at 2.

14

pre-emption.  All of the State law claims here are dependent upon an established ERISA program, and all damages are to be decided from proposed collection from that ERISA program. Considering *Ingersoll-Rand*, *Hampers*, *Robinson*, and *Goodman,* it appears clear that plaintiff's state law claims "relate to" the NWABP in the normal sense of the phrase and should therefore be preempted by ERISA.

On the other hand, I am not persuaded by the state cases upon which plaintiff relies in her reply.  Rpl. at 2-3 .  Two of the cases cited by plaintiff, *Teper v. Park West Galleries Inc.*, 427 N.W.2d 535 (1988)[13] and *Hill v. Ford Motor Co.*, 454 N.W.2d 125 (1989), were decided after the *Shaw* and *Fort Halifax Packing Co., Inc.* decision but prior to the Supreme Court's decision in *Ingersoll-Rand*.  Also, the main case relied upon by plaintiff, *D'Avanzo v. Wise & Marsac, P.C.*, 565 N.W.2d 915, 918-919 (1997), did not resolve the preemption question.  *D'Avanzo*, 565 N.W.2d at 920 ("the preemption issue cannot be resolved on the record before us, and the trial court properly denied defendant's motion for summary disposition.").  Additionally, plaintiff relies primarily on Michigan cases to argue that her claims are not pre-empted by ERISA.  Mtn. at 7-9 (citing *Hill*), Rpl. at 2-3 (citing *Teper*, *D'Avanzo*, and *Hill*).  I find the post-Ingersoll-Rand cases of *Hampers* and *Robinson* more convincing in interpreting federal statutory law.

By her motion, plaintiff requests that she receive the value of the benefits for which she enrolled on defendant's computer; that the Court overturn defendant's decision denying benefits; and that the Court grant summary judgment in her favor.  Mtn. at 1, 4 ¶ 12, 10.  If the Court

---

[13]*Teper v. Park West Galleries, Inc.*, 427 N.W.2d 535, 541 n.12 (Mich. 1988) ("the sole basis for the plaintiff's claim of wrongful discharge is a traditional area of Michigan common law.  The rights and duties of these litigants have their genesis in a contract of employment. The fact that damages were calculated with reference to the plan does not change the nature of this cause of action.").

accepts my conclusion that plaintiff's state law claims are pre-empted by 29 U.S.C. § 1144, the

Court should not grant the relief plaintiff seeks by her motion and should deny plaintiff's motion

for summary judgment.[14]

_____

[14]Nor is pre-emption avoided by 29 U.S.C. § 1144(B)(2)(A).  The Sixth Circuit has stated that "[t]he saving clause, 29 U.S.C. § 1144(b)(2)(A) (1991), qualifies the preemptive force of 29 U.S.C. § 1144(a)."  *International Resources, Inc. v. New York Life Insurance Company*, 950 F.2d 294, 299 (6th Cir. 1992).  In *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003), the Court explained that it is well established in its case law "that a state law must be 'specifically directed toward' the insurance industry in order to fall under ERISA's saving clause; laws of general application that have some bearing on insurers do not qualify."  *Id.* at 334 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50 (1987)).  However, the saving clause does not save all state laws directed at the insurance industry: the clause "saves laws that regulate *insurance*, not insurers."  *Id.* (emphasis in original).  Thus, departing from its prior cases, the Court in *Miller* established a two-prong test to determine the applicability of the saving clause:

> [F]or a state law to be deemed a "law . . . which regulates insurance" under § 1144(b)(2)(A), it must satisfy two requirements.  First, the state law must be specifically directed toward entities engaged in insurance.  Second, . . . the state law must substantially affect the risk pooling arrangement between the insurer and the insured.

*Id.* at 341-42.

Here, neither prong is satisfied by plaintiff's claims.  Plaintiff's state law claims are run-of-the-mill contract and tort claims which regulate the conduct of all persons and entities within the state.  As the Tenth Circuit has recently explained, to satisfy the first prong of the *Miller* test "the law must not 'just have an impact on the insurance industry' but must be 'specifically directed toward the industry.'  Stated otherwise, the state law must 'home in on the insurance industry.'"  *Kidneigh v. UNUM Life Ins. Co. of Am.*, 345 F.3d 1182, 1186 (10th Cir. 2003) (citations omitted) (quoting, respectively, *Pilot Life*, 481 U.S. at 50, and *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 368 (1999)).  Plaintiff's claims do not "home in on the insurance industry" but rather "'are firmly planted in the general principles of [Michigan] tort and contract law,'" and thus do not regulate the insurance industry.  *Kidneigh*, 345 F.3d at 1186 (quoting *Pilot Life*, 481 U.S. at 50) ("the Colorado bad faith claim in this case does not fall within ERISA's savings clause, and as such is expressly preempted.").  *See also Kineg ex rel. Springer v. Hartford Life & Acc. Ins. Co.*, No. Civ.A. 05-00359, 2005 WL 1060660, *3 (E.D.Pa. May 4, 2005) ("the claim brought under Pennsylvania's Unfair Trade Practices and Consumer Protection Law is also not specifically directed toward entities engaged in insurance."); *Burgos v. Group & Pension Administrators, Inc.*, 286 F.Supp.2d 812, 818 (S. D. Tex. 2003) ("The bad faith claims under Texas Insurance Code and the Texas Deceptive Trade Practices Act do not allege violations of a state law regulating insurance for purposes of the savings clause.").

Further, plaintiff's claims do not satisfy the second element of the *Miller* test.  Under this

16

2.     **However, the Court should order the parties to brief the issue of whether plaintiff's state law claims are completely pre-empted by 29 U.S.C. § 1132(a)(1)(B).**

The Sixth Circuit has stated that "preemption [via 29 U.S.C. § 1144] and complete preemption [via 29 U.S.C. § 1132(a)(1)(B)] are distinguishable concepts." *Wright*, 262 F.3d 610 at 614. *See also Alexander v. UDV North America, Inc.*, 78 F.Supp.2d 614, 619 n.6, 623 (E. D. Mich. 1999) (Rosen, J.). This distinction is perhaps best illustrated by example.

In *Alexander*, plaintiffs brought a breach of contract claim against their employer and two of the employer's former managerial employees in state court. *Alexander*, 78 F.Supp.2d at 615. Defendant employer removed the case to this Court on the bases of complete diversity and complete preemption by Section 301 of the Labor Management Relations Act. *Id*. Defendant employer's notice of removal stated that the breach of contract claim "effectively arises under federal law by virtue of a series of collective bargaining agreements . . . executed by [defendant employer] . . . and Plaintiffs' unions which allegedly contradict and superseded the terms of the Guarantee." *Id*.

Judge Rosen noted that, for purposes of complete pre-emption, "it is not enough that a

---

prong, the state law must "substantially affect the risk pooling arrangement between the insurer and the insured." *Miller*, 538 U.S. at 338. In other words, the state law must "alter the scope of permissible bargains between insurers and insureds[.]" *Id*. at 338-39. Here, plaintiff's contract and tort claims do "not affect the kinds of bargains insurers and insureds may make." *Barber v. UNUM Life Ins. Co. of Am.*, 383 F.3d 134, 143-144 (3d Cir. 2004) ("Pennsylvania's bad faith statute does not 'regulate insurance' within the meaning of ERISA's saving clause and is expressly preempted by ERISA."). Moreover, the legal bases of plaintiff's claims "bear no relation to the risk pooled–the risk of loss the insurer agrees to bear on behalf of the insured." *Id*. The "risk pooled . . . is reflected in the policy itself." *Id*. Damages arising from breach of duties imposed by contract or tort law are "not ordinarily a risk identified in the insurance policy as a risk of loss the insurer agrees to bear for its insured." *Id*.

Accordingly, plaintiff's claims fail to satisfy both prongs of the *Miller* test, and they are therefore not based on any "law . . . which regulates insurance" saved from preemption under § 1144(b)(2)(A).

17

*defendant* . . . has injected a matter of CBA [collective bargaining agreement] interpretation into the proceedings." *Alexander*, 78 F.Supp.2d at 619 (emphasis in original). "[A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Id.* at 620-621 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-399 (1987).

Judge Rosen found that "the doctrine of complete preemption [did] not reach the breach-of-contract claim asserted by Plaintiffs[.]" *Alexander*, 78 F.Supp.2d at 623. He stated that "[a]t most, a CBA–and hence, § 301 of the LMRA–enters the picture only through [defendant employer's] assertion of the defense of federal preemption, but *Caterpillar* confirms the well-established principle that such federal defenses do not satisfy the well-pleaded complaint rule." *Id.*

In its August 18, 2004 notice of removal, defendant asserted: "This action is removable under 28 U.S.C. § 1331.[15]  Under ERISA, there is complete pre-emption of all state claims, and federal subject matter jurisdiction is proper in this Court."  Rem. Not. ¶ 2.  Clear resolution of the type of pre-emption applicable here is made difficult by defendant's assertion of complete pre-emption in its notice of removal; defendant's response's use of cases relying upon analysis of § 1144's "relates to" language; and defendant's response's lack of distinction between the two pre-emption doctrines.  Furthermore, although this matter is before the Court on plaintiff's motion for summary judgment, and not a motion to remand on the basis that removal jurisdiction

---

[15]"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331 ("Federal question").

is inappropriate, discussion of the distinct concepts of removal and pre-emption, *Warner*, 46 F.3d at 535,[16] is appropriate here, because "[t]he district court has a 'continuing obligation' to enquire into the basis of subject-matter jurisdiction to satisfy itself that jurisdiction to entertain an action exists." *Confalone v. Western & Southern Life Insurance Company*, No. 5:05 CV 725, 2005 WL 1607989 (N. D. Ohio 2005) (external citation omitted).

Pre-emption under 29 U.S.C. § 1144 "only provides . . . a defense to be raised in state court, not a basis for federal jurisdiction, and thus not a basis for removal[.]" *NGS American, Inc. v. Jefferson*, 218 F.3d 519, 530 (6th Cir. 2000). As the Sixth Circuit has stated: "[s]imply because a claim is preempted by ERISA does not mean it is automatically removable." *Wright*, 262 F.3d at 614. "A state claim may be preempted by ERISA; however, it is not removable unless it is completely preempted by ERISA." *Id*. "ERISA's § 1144 preemption provision does not assure that claims preempted by ERISA are necessarily removable[.]" *Wright*, 262 F.3d at 614 (referencing *Warner*, 46 F.3d at 534). "[A] state law claim is removable to the federal courts only if it is 'complete[ly] preempt[ed].'" *Id*. (referencing *Warner*, 46 F.3d at 535).

Therefore, further briefing from the parties is appropriate to determine whether plaintiff's state law claims are completely pre-empted by ERISA. "[S]tate courts clearly have concurrent jurisdiction over ERISA cases that are not completely preempted." *NGS American, Inc.*, 218 F.3d at 529 (referencing *Warner*, 46 F.3d at 534). "State causes of action not covered by § 1132(a)(1)(B) may still be subject to a preemption claim under § 1144(a) . . . because the state law at issue may 'relate to' a pension or employee benefit plan. But such actions are not subject to removal." *Warner*, 46 F.3d at 535. On the other hand, "[s]tate courts lack jurisdiction to

---

[16]*See also NGS American, Inc. v. Jefferson*, 218 F.3d 519, 530 (6th Cir. 2000).

19

adjudge ERISA cases on the merits, and thus removal is mandatory, only when the state law claims are completely preempted under § 1132." *NGS American, Inc.*, 218 F.3d at 530 (referencing *Warner*, 46 F.3d at 535).[17]

**3.**     ***If the Court ultimately concludes that plaintiff's claims are completely preempted by 29 U.S.C. § 1132(a)(1)(B), then it should dismiss plaintiff's state law claims and provide plaintiff an opportunity to amend her complaint to set forth ERISA claims.***

If the Court ultimately concludes that plaintiff's claims are completely preempted by 29 U.S.C. § 1132(a)(1)(B), then it should dismiss plaintiff's state law claims and provide plaintiff an opportunity to amend her complaint to set forth ERISA claims. *See Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1491 (7th Cir. 1996) ("since we have recharacterized her complaint as one alleging a denial of benefits, Jass should be given the opportunity to amend her complaint to request appropriate relief under § 502(a)."); *Pendleton v. Regent National Bank*, No. CIV. A. 97-4327, 1998 WL 314701, *1 (E. D. Pa. 1998) (describing how the court had previously "granted Defendant's Motion to Dismiss Plaintiff's Complaint based upon the finding that Plaintiff's initial complaint pled state law causes of action which are preempted by ERISA[,]" and "authorized Plaintiff to set forth her claims pursuant to ERISA."); *LaMonica v. Guardian Life Ins. Co. of America*, No. Civ.A. 96-6020(JEI), 1997 WL 80991 (D. N. J. 1997) (finding relief sought by one count "available only through the civil enforcement provisions of ERISA[,]" dismissing the count "to the extent it [sought] relief pursuant to state contract law[,]" deeming "complaint amended to include an ERISA claim for nonpayment of benefits pursuant to

---

[17]This Report & Recommendation does not discuss what should be done if the Court decides that 29 U.S.C. § 1144 does not preempt. However, the case was removed to federal court on the grounds of a federal question. Thus, if the Court does not agree that 29 U.S.C. § 1144 preempts plaintiff's state law claims, the ground for removal of this lawsuit no longer exists.

29 U.S.C. § 1132(a)(1)(B)[,]" and denying the motion to dismiss "to the extent that the ERISA

claim survives[.]"); *Carlson v. Capital Alliance Investments*, No. C96 20499 JW, 1996 WL

417251, *2 (N. D. Cal. 1996) ("[w]hile Plaintiff's claims are preempted by ERISA, the Court

will grant Plaintiff leave to file a Second Amended Complaint."); *Tesch v. General Motors

Corp.*, 685 F. Supp. 1084, 1086 (E. D. Wis. 1988) (finding plaintiff's complaint preempted;

dismissing complaint but declining to dismiss action outright; and providing:  "[t]o the extent

that the plaintiff's complaint states a claim for relief under ERISA, that aspect of her case

remains viable; the plaintiff will be granted leave to amend her complaint to state her ERISA

claims with more particularity.").[18]

## III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United

States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but

fail to raise others with specificity, will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.

Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to

---

[18]The alternative arguments addressed in the motion papers, such as whether plaintiff may concurrently bring a claim for relief under § 1132(a)(1)(B) and § 1132(a)(3) or whether defendant has violated § 1133(2), would be more appropriately addressed after plaintiff's complaint is amended.

E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 8/24/05

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 24, 2005.

s/Eddrey Butts
Case Manager